**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **SOLOMON C. CHANG,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, *et al.*,**<br><br>**Defendants.** | ) | **Case No. 26-cv-3581 (APM)** |

**MEMORANDUM OPINION AND ORDER**

## I. INTRODUCTION

This case concerns a decision of the United States Department of International Aid ("USAID") to debar Plaintiff Solomon C. Chang, a government contracting professional, from participating in federal procurement and non-procurement programs for five years. Plaintiff moves for a temporary restraining order ("TRO") or preliminary injunction to enjoin Defendants from enforcing the debarment decision. Alternatively, Plaintiff requests a stay of the decision pursuant to 5 U.S.C. § 705. For the reasons that follow, the motion is denied.

## II. BACKGROUND

Plaintiff is a "government-contracting professional whose career has focused on federal acquisition and assistance." Compl. for Declaratory and Injunctive Relief, ECF No. 1 [hereinafter Compl.], ¶ 16. He formerly served as a Foreign Service Officer at USAID where, at one point, he "was responsible for acquisition and assistance activities involving approximately $130 million in grants and contracts." *Id.* ¶ 17. In July 2023, while Plaintiff was employed at USAID, a forensic examination of Plaintiff's government-furnished devices for an unrelated investigation revealed

sexually explicit material and related internet activity. *Id.* ¶ 19. Plaintiff cooperated with a follow-up investigation by USAID's Office of Inspector General (OIG), providing his devices and participating in multiple interviews. *Id.* ¶ 20. Investigators determined that Plaintiff had viewed and stored sexually explicit and pornographic material on his government-issued devices. Pl.'s Mot., Ex. 4, ECF No. 2-7 [hereinafter Final Action Mem.], at 1–2. He also had visited several websites for procuring commercial sex on October 19, 2021, and between April 30 and July 16, 2023. Compl. ¶ 21; Final Action Mem. at 2, 4. Further, Plaintiff sent an email from his personal email account using his government-furnished iPhone on April 30, 2023, "asking an individual about her availability and hourly rate." Compl. ¶ 21; Final Action Mem. at 2. Plaintiff admitted to this conduct and apologized for it. Compl. ¶ 23.

USAID ended Plaintiff's Foreign Service assignment, and Plaintiff resigned from USAID effective November 6, 2024. *Id.* ¶ 24. After leaving USAID, Plaintiff worked for two federal contractors. *Id.* ¶¶ 25–27. His most recent role, which began on June 22, 2026, involved "federal contract strategy" and supporting other work related to federally funded programs. *Id.* ¶ 27.

On July 29, 2026, USAID issued Plaintiff a Notice of Proposed Debarment. *Id.* ¶ 28; Pl.'s Mot. for TRO and Prelim. Inj., and in the Alt., for a Stay Under 5 U.S.C. § 705, ECF No. 2 [hereinafter Pl.'s Mot.], Ex. 1, ECF No. 2-4 [hereinafter Notice of Proposed Debarment]. The Notice of Proposed Debarment was accompanied by a Proposed Action Memorandum dated April 20, 2026. Compl. ¶ 28; Pl.'s Mot., Ex. 2, ECF No. 2-5 [hereinafter Proposed Action Mem.]. The Proposed Action Memorandum recommended debarment under Federal Acquisition Regulation (FAR) 9.406-2(c) on two grounds: (1) Plaintiff's misuse of government-furnished equipment to view sexually explicit and pornographic material; and (2) conduct that constituted or created the appearance of procuring commercial sex in violation of USAID's Standards of Conduct

and Counter Trafficking in Persons Code of Conduct. *See* Proposed Action Mem. at 1, 3–6. The Notice of Proposed Debarment "immediately caused [Plaintiff] to be listed as 'excluded' in the System for Award Management," which is the federal government's official platform for facilitating government contracting and grant opportunities. Compl. ¶ 31; Notice of Proposed Debarment at 1. Six days after issuance of the Notice of Proposed Debarment, Plaintiff's employer terminated his employment because "his proposed-debarment status prevented him from continuing to perform work supporting federal contracts." Compl. ¶ 34.

On August 7, 2026, Plaintiff submitted a written response opposing the proposed debarment, which included mitigating evidence, such as corrective measures he had undertaken and various reference letters from former colleagues. *Id.* ¶¶ 35–41; Pls.' Mot., Ex. 3, ECF No. 2-6 [hereinafter Pl.'s Resp.], at 1, 4–17. On September 16, 2026, USAID issued a Final Action Memorandum recommending debarment based on his "access and stor[ing] [of] sexually-explicit material on USAID-furnished devices" and "the U.S. Government's long-standing zero tolerance policy for trafficking in persons, including the appearance of facilitating trafficking-related activities." Final Action Mem. at 1–3. Plaintiff's mitigating evidence, the agency explained, did not "overcome the seriousness of his misconduct and need for additional U.S. Government protection." *Id.* at 4.

On September 22, 2026, USAID issued a Notice of Debarment, debarring Plaintiff for five years starting July 9, 2026. Pl.'s Mot., Ex. 5, ECF No. 2-8 [hereinafter Notice of Debarment], at 1. The debarment excludes Plaintiff from "federal procurement and nonprocurement programs," "restrict[ing] his ability to work in the federal-contracting field in which his professional experience is concentrated." Compl. ¶ 48. Plaintiff brought this action on October 14, 2026,

*see* Compl., and simultaneously moved for emergency relief to enjoin enforcement of or stay the debarment decision pending review, *see* Pl.'s Mot.

## III. LEGAL STANDARD

TROs and preliminary injunctions are "extraordinary" remedies. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A party moving for either must make four showings: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of emergency relief, (3) the balance of equities supports emergency relief, and (4) emergency relief is in the public interest. *Id.* at 20. Where, as here, the government is the opposing party, the last two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).[1]

The Administrative Procedure Act ("APA") separately permits a court to "issue all necessary and appropriate process to postpone the effective date of agency action or to preserve status or rights pending conclusion of the review proceedings" where "required and to the extent necessary to prevent irreparable injury." 5 U.S.C. § 705. Courts in this District evaluate requests for relief under § 705 under the same factors governing a request for a TRO or preliminary injunction. *See Dist. of Columbia v. U.S. Dep't of Agric.*, 444 F. Supp. 3d 1, 15 (D.D.C. 2020); *see also Coal. for Humane Immigrant Rts. v. U.S. Dep't of Homeland Sec.*, 780 F. Supp. 3d 79, 87 (D.D.C. 2025).

---

[1] Courts in this Circuit traditionally have evaluated these four factors on a "sliding scale": if a "movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009). The Supreme Court's decision in *Winter*, however, called that approach into doubt, and the D.C. Circuit has not yet decided "whether the sliding-scale approach remains valid." *See Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 726 (D.C. Cir. 2022). Here, the court need not decide to what extent the "sliding scale" survived *Winter* because the court concludes that Plaintiff has not met his burden to demonstrate a substantial likelihood of success on the merits.

## IV. DISCUSSION

Plaintiff contends that each factor weighs in favor of relief. Pl.'s Mot., Pl.'s Mem. of P. & A. in Support of His Mot. for a TRO and Prelim. Inj., ECF No. 2-1 [hereinafter Pl.'s Mem.], at 11. The court begins and ends with Plaintiff's likelihood of success. Because Plaintiff has not met the minimum requirement of raising a "serious legal question on the merits," the court will deny relief without addressing the other factors. *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 726 (D.C. Cir. 2022) (quoting *Sherley v. Sebelius*, 644 F.3d 388, 398 (D.C. Cir. 2011)).

The court's review of an agency's debarment decision is governed by the APA's traditional "arbitrary and capricious" standard. 5 U.S.C. § 706(2)(A). This review is "highly deferential," and the court "must presume the validity of agency action." *Kisser v. Cisneros*, 14 F.3d 615, 619 (D.C. Cir. 1994). Deference to agency decision-making, however, does not require the court "to countenance an agency's failure to consider relevant factors or clear errors of judgment." *Sloan v. Dep't of Hous. & Urb. Dev.*, 231 F.3d 10, 15 (D.C. Cir. 2000) (cleaned up). The court's inquiry is thus "focused on whether the agency examined the relevant [information] and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Id.* (cleaned up).

Plaintiff argues that he is likely to succeed on three grounds, each of which corresponds to one of his three APA claims. *See* Compl. at 13–23. First, he contends that "USAID's stated rationale for debarment did not establish that [Plaintiff] is not presently responsible." Pl.'s Mem. at 13. Second, he asserts that USAID failed to give him requisite notice of sex trafficking, or the appearance of it, as reason for his debarment. *Id.* at 16. Finally, he asserts that USAID failed to provide a "reasoned basis for imposing a five-year debarment." *Id.* at 18. The court takes each in turn.

**A. Present Responsibility**

Under the applicable regulations, an agency may debar a "contractor or subcontractor based on any . . . cause of so serious or compelling a nature that it affects the present responsibility of the contractor or subcontractor." FAR 9.406-2(c). A contractor can "meet the test of present responsibility by demonstrating that [he] has taken steps to ensure that the wrongful acts will not recur" and that he will not pose "a future business risk" to the U.S. government. *Robinson v. Cheney*, 876 F.2d 152, 160 (D.C. Cir. 1989). In deciding whether to debar a contractor, the debarring official must thus consider not only the seriousness of the conduct but also any mitigating or aggravating factors. FAR 9.406-1(a). The contractor bears "the burden of demonstrating, to the satisfaction of the . . . debarring official, [his] present responsibility and that debarment is not necessary." FAR 9.406-1(b).

Plaintiff asserts that the debarment rationales invoked in the Final Action Memorandum—the Government's "zero tolerance policy for trafficking in persons" and repeated misuse of government-furnished equipment—do not explain "what present or prospective business risk [Plaintiff] posed when USAID issued its final decision." Pl.'s Mem. at 13–14. In his view, "USAID needed to explain why [Plaintiff's] past conduct demonstrates that he is unable or unwilling to perform federal work responsibly," and "[n]either the Proposed Action Memorandum nor Final Action Memorandum ever supplied that explanation." *Id.* at 14.

The court is unpersuaded. In addition to detailing Plaintiff's misuse of government-furnished equipment in violation of USAID policies, the agency clearly set forth the record evidence showing Plaintiff "took active steps to procure commercial sex" and that his actions clearly breached USAID's prohibitions against such conduct. Proposed Action Mem. at 3–6. As the agency explained in the Proposed Action Memorandum, "[a]ll USAID employees are

required to abide by the USAID [Counter Trafficking in Persons] Code of Conduct," which prohibits both procuring commercial sex and the appearance of procuring or soliciting commercial sex. *Id.* at 6. The Memorandum states that these "requirements are further reinforced in USAID's Standards of Conduct," which sets out the agency's prohibition on "engaging in behaviors that facilitate or support [trafficking-in-persons]," including through "the procurement of commercial sex acts and use of forced labor." *Id.* And the Final Action Memorandum emphasized the seriousness of Plaintiff's conduct by highlighting the U.S. government's "long-standing zero tolerance policy for trafficking in persons, including the appearance of facilitating trafficking-related activities." Final Action Mem. at 2–3. The agency was not required to provide an extended explanation of how Plaintiff's admitted breaches established a commercial risk to the United States. Indeed, the government's long-standing zero-tolerance policy for trafficking-related activities, including the appearance of participating in trafficking-related activities, itself conveys the seriousness of the risk posed by a contractor who violates it.

Plaintiff further contends that the agency failed to adequately account for the mitigating factors that he set forth in his response, such as his "cooperation with USAID's investigation, acceptance of responsibility, counseling and training, and corrective practices separating personal activity from employer-issued equipment." Pl.'s Mem. at 15. But the agency expressly took these into account. *See* Final Action Mem. at 3–4 (noting that Plaintiff "provided information related to the specific measures he had taken, including numerous counseling sessions and trainings" and that he "provided details about his cooperation" and nevertheless concluding "[b]ased on the analysis of" these and countervailing factors that "Mr. Chang's debarment . . . is necessary to protect the U.S. Government"). Notwithstanding these mitigating factors, the debarring official concluded that Plaintiff's violation of USAID's standards of conduct presented a risk to the United

States government, as reflected in the zero-tolerance trafficking policy. *Id.* While Plaintiff argues that his corrective measures fully mitigated his future business risk to the United States government, the debarring official was not obligated to credit his assertions nor to find that his corrective measures were sufficient to overcome the "legitimate concerns" motivating the debarment decision. *See Robinson*, 876 F.2d at 160–61.

Ultimately, it was Plaintiff's burden to show that he was presently responsible and would not pose a future business risk to the United States. *See* FAR 9.406-1(a); *Robinson*, 876 F.2d at 160. The agency determined that Plaintiff failed to make this showing. Final Action Mem. at 3–4. The court is not presently persuaded that the agency acted unreasonably in so concluding and does not think it likely that Plaintiff will succeed in showing that Defendants' finding that Plaintiff was not "presently responsible" was arbitrary and capricious.

### B. Adequate Notice of the Basis of Debarment

Next, Plaintiff argues that "USAID violated the FAR's notice and fundamental-fairness requirements by first invoking trafficking as a basis in its final decision." Pl.'s Mem. at 16. FAR requires agencies to provide contractors with notice of the reasons for the proposed debarment and a meaningful opportunity to address those reasons. FAR 9.406-3(b)(1), (c)(3)(ii)–(iv); *see also Friedler v. Gen. Servs. Admin.*, 271 F. Supp. 3d 40, 56 (D.D.C. 2017) (setting aside an agency's debarment decision where a contractor's debarment was based on "new and independent grounds" for debarment of which the contractor had no notice and to which he had no opportunity to respond). Plaintiff contends that the agency improperly introduced a violation of the government's zero-tolerance policy against trafficking as a basis for debarment only in the Final Action Memorandum. Pl.'s at Mem. at 16.

Again, at this preliminary stage, the court is not convinced. The Proposed Action Memorandum referenced USAID's Counter *Trafficking* in Persons Code of Conduct, which "prohibits all USAID employees, contractors, and recipients from procuring commercial sex." Proposed Action Mem. at 6. It also quoted from the USAID Standards of Conduct, which state that "USAID opposes any activities that may contribute to [Trafficking in Persons], including the procurement of commercial sex acts . . ." *Id.* The agency accused Plaintiff of violating these conduct codes. *Id.* Plaintiff therefore was put on notice of trafficking as grounds for potential debarment, and he had sufficient opportunity to respond. Consequently, the agency's reference to the government's policy against trafficking in its Final Action Memorandum did not constitute a "new and independent" cause for debarment. *Cf. Friedler*, 271 F. Supp. 3d at 56.

**C. Period of Debarment**

Finally, Plaintiff argues that the agency failed to justify a five-year debarment. Pl.'s Mem. at 18. Under the applicable regulations, debarment must be imposed "for a period commensurate with the seriousness of the cause(s)," which "[g]enerally. . . should not exceed 3 years." FAR 9.406-4(a)(1). Here, USAID identified the "duration" of the conduct as an aggravating factor that warranted the upward adjustment, noting that Plaintiff's "misconduct was not limited to a single instance; rather, he violated USAID policies continually over time." Proposed Action Mem. at 6. Plaintiff takes issue with the agency's characterization of the conduct as continuous and argues that USAID did not explain why this "sole identified aggravating factor warranted two years beyond the general benchmark." Pl.'s Mem. at 19–20.

The court is not persuaded that Plaintiff is likely to succeed in showing that the agency abused its discretion when imposing a five-year debarment. The record did not have to establish, as Plaintiff contends, that his misconduct "occurr[ed] continually throughout nearly two years" for

the agency to determine that he "continually" violated USAID policies. *Id.* Plaintiff's misconduct was recurring and happened with frequency, even if that misconduct was concentrated during two time periods. Compl. ¶ 21. A "rational connection" can thus be drawn between repeated violations of USAID's Standards of Conduct and the agency's decision to impose a harsher sanction. *See Sloan*, 231 F.3d at 15 (internal quotation marks omitted).

* * *

In sum, at this preliminary stage, the court cannot conclude that Defendants' decision was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law. Nor can the court conclude that Plaintiff has raised a "serious legal question on the merits." *Changji*, 40 F.4th at 726 (internal quotation marks omitted). Plaintiff therefore has not met his burden of showing that he is likely to succeed on the merits. He therefore is not entitled to the "extraordinary" remedy of a TRO or preliminary injunction. *Winter*, 555 U.S. at 24. Plaintiff's alternate request for a stay under 5 U.S.C. § 705 falls short for the same reasons.

## V. CONCLUSION AND ORDER

Because Plaintiff has not established a substantial likelihood of success on the merits, Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, and in the Alternative, For a Stay Under 5 U.S.C. § 705, ECF No. 2, is denied.

Dated: November 13, 2026

Amit P. Mehta
United States District Judge